[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12238

_____

D.C. Docket No. 1:19-cv-23700-CMA,
Bkcy No. 11-bk-19484-AJC

In re: TRANSBRASIL S.A. LINHAS AÉREAS,

Debtor.

_____

ESTATE OF OMAR FONTANA, et al.,

Plaintiffs-Appellants,

versus

ACFB ADMINISTRAÇÃO JUDICIAL LTDA,
as Trustee of Transbrasil S.A. Linhas Aéreas,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 19, 2021)

Before MARTIN, ROSENBAUM, and LUCK, Circuit Judges.

MARTIN, Circuit Judge:

Several parties appeal two discovery-related orders in a bankruptcy case. After careful consideration, and with the benefit of oral argument, we conclude the orders were not final and thus dismiss this appeal for lack of jurisdiction.

## I. BACKGROUND

In 2002, Transbrasil S.A. Linhas Aéreas ("Transbrasil"), an airline, was placed in involuntary bankruptcy in Brazil (the "Brazilian Bankruptcy Case"). In 2011, seeking U.S. recognition of the Brazilian Bankruptcy Case, the Trustee[1] for Transbrasil's estate filed a petition in the Bankruptcy Court for the Southern District of Florida ("the Bankruptcy Court") under Chapter 15 of the Bankruptcy Code. See 11 U.S.C. § 1515(a). Chapter 15 was enacted to "provide effective mechanisms for dealing with cases of cross-border insolvency." 11 U.S.C. § 1501(a); see also 1 Collier on Bankruptcy ¶ 13.03[1][a] (16th ed. 2021) [hereinafter "Collier"] (stating one "objective of chapter 15 is to furnish effective mechanisms to achieve cooperation between courts of the United States and courts of foreign countries involved in cross-border insolvency cases"). Section 1515(a), part of Chapter 15, permits a foreign representative to apply to a bankruptcy court "for recognition of a foreign proceeding . . . by filing a petition for recognition." The Trustee here, as the foreign representative, sought Chapter 15 recognition of

---

[1] The current trustee is ACFB Administração Judicial Ltda – ME ("ACFB"). Before ACFB, two people served as co-trustees: Gustavo Henrique Sauer de Arruda Pinto and Alfredo Luiz Kugelmas. We refer to ACFB and its predecessors as the "Trustee."

2

the Brazilian Bankruptcy Case in order to seek information about any assets of Transbrasil and related companies that might have been in or transferred through the United States.  The Bankruptcy Court granted the petition.

In 2015, the Trustee filed a motion in the Brazilian Bankruptcy Case to extend that case to additional entities and individuals, including the plaintiffs-appellants in this appeal (the "Affected Parties").  This request effectively sought to pierce the corporate veil and include the Affected Parties' assets in the bankruptcy estate.  The Trustee also filed a request in the Brazilian Bankruptcy Case to freeze the Affected Parties' assets.  According to the Trustee, it sought to extend the Brazilian Bankruptcy Case to the Affected Parties and to freeze their assets because the Affected Parties "controlled Transbrasil when it was operational and received assets derived from a scheme to raid the company's coffers."  A Brazilian court entered an order freezing the Affected Parties' assets (the "Freeze Order").  The Freeze Order indicated that it should also be implemented by the Bankruptcy Court for assets in the United States.

In 2019, the Trustee issued several subpoenas to U.S.-based financial entities concerning the Affected Parties' financial affairs.[2]  The Trustee said the discovery was relevant for three purposes: (1) to support the Trustee's claims against the

---

[2] Chapter 15 has its own provision for discovery.  See 11 U.S.C. § 1521(a)(4); see also 1 Collier ¶ 13.07[2] ("Section 1521(a)(4) authorizes the court to give the foreign representative the power to engage in discovery[.]" (footnote omitted)).

Affected Parties in the Brazilian Bankruptcy Case, (2) to investigate potential claims against participants in a supposed scheme to divert assets from Transbrasil, and, relevant here, (3) to aid in implementing the Freeze Order for assets in the United States. The Affected Parties moved for a protective order to shield them from the subpoenas, and the Bankruptcy Court denied that motion. The Bankruptcy Court also denied the Affected Parties' motion for reconsideration. The Affected Parties appealed both orders to the District Court.

The District Court dismissed the appeal for lack of jurisdiction. The District Court found that the Bankruptcy Court's orders denying the protective order and denying reconsideration were not final orders the District Court could review. The District Court noted that, in this very same Chapter 15 case, this Court previously ruled that an order denying a motion to quash a different subpoena was not final. See Marigrove, Inc. v. Sauer de Arruda Pinto, No. 15-11596, ECF No. 41, slip op. at 1–2 (11th Cir. Aug. 7, 2015) (unpublished) (per curiam).[3] Based on Marigrove, the District Court here found "the Eleventh Circuit resolved the precise issue raised by [the parties], in this very case, mandating the Court come to the same

---

[3] In Marigrove, the Trustee served a subpoena on a third party concerning Marigrove, Inc. and other entities (collectively "Marigrove"), who moved to quash the subpoena. Marigrove, slip op. at 1. The Bankruptcy Court denied in part the motion to quash, and Marigrove appealed. Id. The District Court dismissed the appeal, and Marigrove then appealed that dismissal to this Court. Id. This Court dismissed Marigrove's appeal for lack of jurisdiction, noting that as a "general rule, orders denying motions to quash subpoenas are not final orders that are immediately appealable." Id. at 2–3.

conclusion."[4]  The District Court denied the Affected Parties' motion for

reconsideration.  The Affected Parties appealed both rulings.

## II.  DISCUSSION

We consider <u>de novo</u> all jurisdictional issues.[5]  <u>In re Donovan</u>, 532 F.3d

1134, 1136 (11th Cir. 2008).  This Court has jurisdiction "over only final

judgments and orders arising from a bankruptcy proceeding."  <u>Id.</u>; <u>see</u> 28 U.S.C.

§ 158(d)(1).  By the same token, we lack jurisdiction over interlocutory bankruptcy

orders.  <u>In re Celotex Corp.</u>, 700 F.3d 1262, 1265 (11th Cir. 2012) (per curiam).

The Affected Parties primarily argue the discovery orders were final and thus this

Court has jurisdiction over their appeal.  In the alternative, the Affected Parties

---

[4] The District Court also denied the Affected Parties leave to appeal the Bankruptcy Court's discovery orders as a discretionary interlocutory appeal.  <u>See</u> 28 U.S.C. § 158(a)(3).  The Affected Parties do not challenge this ruling on appeal, so we do not address it here.

[5] In passing, the Trustee says "all Subpoena recipients have produced the requested documents," so "it is entirely possible that this appeal is moot."  An appeal is moot, and this Court lacks jurisdiction, when the case "no longer presents a live controversy with respect to which the court can give meaningful relief."  <u>Aaron Private Clinic Mgmt. LLC v. Berry</u>, 912 F.3d 1330, 1335 (11th Cir. 2019) (quotation marks omitted).  Our Court has an obligation to consider sua sponte whether an appeal is moot, <u>id.</u>, so we pressed counsel at oral argument on this issue.  The parties agreed that even if the documents have been produced, there is at least some relief a court could give, such as ordering the Trustee to destroy the documents in the United States.  <u>Cf.</u> <u>Church of Scientology of Cal. v. United States</u>, 506 U.S. 9, 13, 113 S. Ct. 447, 450 (1992) (holding that an appeal concerning produced tape recordings was not moot because a court could "effectuate a partial remedy by ordering the [receiving party] to destroy" copies of the recordings).  However, in light of our holding that this Court lacks jurisdiction over the appeal because the Bankruptcy Court's discovery orders were not final, we need not also decide whether this appeal is moot.  <u>See</u> <u>Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.</u>, 549 U.S. 422, 431, 127 S. Ct. 1184, 1191 (2007) ("[T]here is no mandatory 'sequencing of jurisdictional issues.'").

argue the discovery orders fall under one of the exceptions to the final judgment rule. We address each argument in turn.

## A.     The Discovery Orders Were Not Final

The Affected Parties argue that this Court has jurisdiction over their appeal because the Bankruptcy Court's orders denying their motion for a protective order and their motion for reconsideration were final orders. It is well-established that, as a "general proposition," discovery orders are "not final orders" and therefore "not immediately appealable." In re Int'l Horizons, Inc., 689 F.2d 996, 1000–01 (11th Cir. 1982) (quotation marks omitted). However, the Affected Parties argue that discovery orders in Chapter 15 cases are final orders because "chapter 15 proceedings are, by definition, proceedings ancillary to bankruptcy cases in foreign courts" and thus "a bankruptcy court has nothing left to do after granting or denying discovery." As the parties acknowledge, our framework for deciding whether a bankruptcy order is final comes from the Supreme Court's recent decision in Ritzen Group, Inc. v. Jackson Masonry, LLC, 589 U.S. __, 140 S. Ct. 582 (2020).

In ordinary civil litigation, a decision is "final" for purposes of appeal only "upon completion of the entire case, i.e., when the decision terminates the action or ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Id. at 586 (alteration adopted and quotation marks omitted). But

bankruptcy litigation is a bit different than ordinary civil litigation. "A bankruptcy case embraces an aggregation of individual controversies. Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." Id. (citation and quotation marks omitted); see also Donovan, 532 F.3d at 1136 ("Finality is given a more flexible interpretation in the bankruptcy context[.]"). It is therefore common for a bankruptcy court to resolve discrete disputes, thereby allowing separate "appeals from discrete, controversy-resolving decisions," even "while the umbrella bankruptcy case remains pending." Ritzen Grp., 140 S. Ct. at 586–87. "In short," although in ordinary civil litigation the "usual judicial unit for analyzing finality" is "the case," in bankruptcy it is often "the proceeding." Id. at 587 (quotation marks omitted); see also In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985) ("In bankruptcy proceedings, it is generally the particular adversary proceeding or controversy that must have been finally resolved, rather than the entire bankruptcy litigation."). As such, a court considering whether an order in a bankruptcy case is final must "define" the "appropriate procedural unit for determining finality." Ritzen Grp., 140 S. Ct. at 588–89.

In Ritzen Group, the Supreme Court considered whether a bankruptcy court's order denying relief from the automatic stay is a final order. Id. at 586. Under the automatic stay, the "filing of a bankruptcy petition automatically halts

7

efforts to collect prepetition debts from the bankrupt debtor outside the bankruptcy forum." Id. at 589.  However, a creditor may move for relief from the automatic stay (a "stay-relief motion") when the creditor has a claim against the debtor's estate.  Id.  In Ritzen Group, the debtor argued that an order denying a stay-relief motion is a final order because the relevant proceeding for determining finality is the stay-relief motion.  See id.  The creditor, in turn, argued that the relevant proceeding is the creditor's claim against the debtor's estate, so a ruling on the stay-relief motion is only "a first step" in the claim proceeding and thus not final. Id.

The Supreme Court agreed with the debtor and held that "the appropriate 'proceeding' is the stay-relief adjudication."  Id.  As a result, the Court held that an order denying a stay-relief motion is a final order.  Id.  It reasoned that an "order ruling on a stay-relief motion disposes of a procedural unit anterior to, and separate from," the creditor's claim and "initiates a discrete procedural sequence."  Id. Stated differently, the Supreme Court viewed the stay-relief motion and the creditor's claim as two "discrete" or "separate" proceedings and thus held that an order on the stay-relief motion is a final order in that separate proceeding. However, in doing so, the Supreme Court also cautioned that courts should not view "disputes over minor details about how a bankruptcy case will unfold" as separate proceedings.  Id. at 590.

8

Applying the framework provided by Ritzen Group, we hold that the

Bankruptcy Court's discovery orders were not final orders.[6]  Discovery, whether in

a Chapter 15 case or otherwise, is ordinarily not "discrete" or "separate" from the

proceeding for which the discovery is sought.  Id. at 589.  To the contrary,

discovery is "merely a preliminary step" to obtain information for use in some

other proceeding, and thus discovery disputes are nothing more than "disputes over

minor details about how a bankruptcy case will unfold."  Id. at 590.  As such, the

"appropriate procedural unit for determining finality" is not the discovery dispute

but the proceeding for which the discovery is sought.  Id. at 588.  Here, that

proceeding is the implementation of the Freeze Order, as the record is clear that the

Trustee sought the discovery in part to aid in implementing the Freeze Order.  And

the record demonstrates that the Freeze Order may eventually be implemented in

the Chapter 15 case.  The Brazilian court that entered the Freeze Order indicated

that the Order should be implemented by the Bankruptcy Court for assets in the

United States.  Specifically, the Brazilian court stated the Affected Parties' assets

in the United States "must be frozen/attached," which could be done by "directly

---

[6] As noted above, the District Court made the same finding based on this Court's order in Marigrove, which concluded that a separate discovery order in this same Chapter 15 case was not a final order.  See Marigrove, slip op. at 1–2.  The parties dispute the scope of Marigrove's holding and whether Marigrove governs this appeal.  Because we hold that the discovery orders here were not final under the Supreme Court's recent decision in Ritzen Group, we need not consider this Court's earlier unpublished (and therefore nonprecedential) order in Marigrove.

petition[ing]" the Bankruptcy Court.  This shows the discovery at issue in the discovery orders may be used by the Trustee to aid in implementing the Freeze Orders.[7]  On this record, the discovery orders were "merely a preliminary step" in the Freeze Order proceeding and thus were not final orders.  Id. at 590.

We are not persuaded otherwise by the Affected Parties' argument that discovery orders under Chapter 15 should receive special treatment in terms of finality.  Again, the Affected Parties say discovery orders under Chapter 15 are final orders because "chapter 15 proceedings are, by definition, proceedings ancillary to bankruptcy cases in foreign courts" and thus "a bankruptcy court has nothing left to do after granting or denying discovery."  For starters, the record belies the Affected Parties' assertion that the Bankruptcy Court has "nothing left to do" in this Chapter 15 proceeding.  As just discussed, the Bankruptcy Court may be called upon to implement the Freeze Order based on the discovery at issue in the discovery orders.  Beyond that, we are not convinced that the primary authority

---

[7] The Affected Parties say the subpoenas at issue in the discovery orders were directed at their personal financial accounts, but the Freeze Order does not apply to such accounts.  As such, the Affected Parties argue the discovered information cannot be used to implement the Freeze Order.  The Trustee disagrees and argues that the Freeze Order does not exclude the Affected Parties' personal financial accounts.  We do not view this dispute as material.  Even assuming the Affected Parties are correct that the Freeze Order does not apply to their financial accounts, that does not mean the discovered information cannot be used in aid of implementing the Freeze Order.  For instance, the discovered information could be used by the Trustee to locate other assets that are covered by the Freeze Order.

the Affected Parties rely on for their position, the out-of-circuit decision in In re Barnet, 737 F.3d 238 (2d Cir. 2013), applies here.

In Barnet, the foreign representatives petitioned a bankruptcy court under Chapter 15 for recognition of a liquidation proceeding in Australia. Id. at 241. The foreign representatives sought discovery from a company, and the court denied the company's motion to stay the discovery. Id. On appeal, the Second Circuit categorically held that a discovery order under Chapter 15 is immediately appealable for two reasons. Id. at 244. First, the Second Circuit compared discovery under Chapter 15 to discovery under 28 U.S.C. § 1782(a), which permits discovery "for use in a proceeding in a foreign or international tribunal." Id. (quotation marks omitted). It noted that, like discovery under section 1782(a), discovery under Chapter 15 is "ancillary to a suit in another tribunal, such that there will never be a final resolution on the merits beyond the discovery itself." Id. (quotation marks and citation omitted). Second, the Second Circuit noted that "a party aggrieved by the automatic relief imposed by Section 1520" (another provision in Chapter 15) could immediately appeal, as "the imposition of automatic relief requires no further action by the Bankruptcy Court." Id. Therefore, the Second Circuit reasoned, if "appellate review is available to one, . . . it should be available to the other." Id.

11

Barnet is distinguishable from this case for a couple reasons.  First, the Second Circuit did not have the benefit of Ritzen Group when it issued Barnet, so it did not wrestle with the question of whether discovery under Chapter 15 is a "discrete" or "separate" proceeding or "merely a preliminary step" in some other proceeding.  See Ritzen Grp., 140 S. Ct. at 589–90.  As such, the two bases for its decision are largely irrelevant under the now-required analysis to the extent the Second Circuit analogized discovery orders under Chapter 15 to orders in other contexts instead of applying Ritzen Group's framework.[8]

Second, there is no indication in Barnet that any proceedings other than discovery were contemplated in that Chapter 15 case.  As such, Barnet is different than this case, where the record is clear that the Trustee sought the discovery in part to aid in implementing the Freeze Order in the Chapter 15 case.  In our view, this difference matters.  If a Chapter 15 case exists solely to obtain discovery for use in a foreign bankruptcy case, then the discovery might not be "merely a

---

[8] Neither do we adopt Barnet's analogy between discovery orders under Chapter 15 and those under section 1782(a).  Like the Second Circuit, our Court has held that discovery orders under section 1782(a) are immediately appealable.  See In re Furstenberg Fin. SAS v. Litai Assets LLC, 877 F.3d 1031, 1034 (11th Cir. 2017) ("In a § 1782 proceeding, the underlying case is necessarily conducted in a foreign tribunal.  Therefore, once the district court has ruled on the parties' motions concerning the evidentiary requests, there is no further case or controversy before the district court." (alteration adopted and quotation marks omitted)).  But it does not follow from the section 1782(a) context that all discovery orders in the Chapter 15 context are also categorically final and thus immediately appealable.  In a section 1782(a) proceeding, there is nothing but the discovery, so the discovery order must be immediately appealable.  See id.  In a Chapter 15 case, by contrast, and as this case demonstrates, a discovery order is ordinarily a "preliminary step" of a larger proceeding.

12

preliminary step" in some other Chapter 15 proceeding. Instead, in such a case, it would seem the discovery is the only proceeding, and thus a discovery order may be a final order that is immediately appealable, as the Second Circuit held in Barnet. But again, that's not the case we have. Instead, the discovery orders here were "merely a preliminary step" in the Freeze Order proceeding.

In sum, the Bankruptcy Court's discovery orders were not final orders.

**B.    The Discovery Orders Do Not Fall Under One of the Exceptions to the Final Judgment Rule**

As an alternative to their argument that the Bankruptcy Court's discovery orders were final, the Affected Parties also argue the orders fall under one of the exceptions to the final judgment rule, and thus this Court has jurisdiction. Specifically, citing Gillespie v. U.S. Steel Corp., 379 U.S. 148, 153–54, 85 S. Ct. 308, 311–12 (1964), the Affected Parties argue that the discovery orders "fall within the exception for intermediate resolution of issues fundamental to the merits of the case." In Gillespie, the Supreme Court held that "even an order of marginal finality should be accorded immediate review if the question presented is fundamental to further conduct of the case." Atl. Fed. Sav. & Loan Ass'n of Ft. Lauderdale v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989).

The Affected Parties say the question presented in the merits of their appeal—whether the discovery orders are valid—is fundamental to the further

13

conduct of the Chapter 15 case and thus the Gillespie exception applies. They say the validity of the discovery orders is fundamental to the conduct of the case because if the orders are invalid, then the Trustee will be forced to end its discovery into the Affected Parties' financial affairs, which they assert is the only remaining purpose of the Chapter 15 case.

We reject the Affected Parties' assertion. For one thing, the Supreme Court has since narrowed the Gillespie exception to the "unique facts of that case"; otherwise, the Supreme Court said, the final judgment rule "would be stripped of all significance." Coopers & Lybrand v. Livesay, 437 U.S. 463, 477 n.30, 98 S. Ct. 2454, 2462 n.30 (1978), superseded by rule on other grounds as stated in Microsoft Corp. v. Baker, 582 U.S. __, 137 S. Ct. 1702 (2017). In Coopers & Lybrand, the Supreme Court characterized Gillespie as a case involving "an unsettled issue of national significance" in which "none of the policies of judicial economy served by the finality requirement" were at play. Id. The Affected Parties do not attempt to liken this case to those "unique facts," and we see little resemblance ourselves.

In any event, the Affected Parties fail to show how the validity of the discovery orders is fundamental to the conduct of the Chapter 15 case. The record does not indicate that the Chapter 15 case exists solely to obtain information about the Affected Parties' financial affairs. For instance, the Trustee initiated the

14

Chapter 15 case in part to seek information on Transbrasil's assets in the United States more broadly. In fact, the Affected Parties acknowledge that, even if the discovery orders are invalid, the Trustee "will still be able to search for Transbrasil's assets" in the Chapter 15 case. As such, the validity of the discovery orders is not fundamental to the conduct of this case and thus the Gillespie exception does not apply.

### III.  CONCLUSION

The Bankruptcy Court's discovery orders were not final orders and thus were not immediately appealable. The discovery orders also do not fall under one of the exceptions to the final judgment rule. Our Court therefore lacks jurisdiction over this appeal.

**DISMISSED.**