**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

THE ANDERSON LIVING TRUST, f/k/a
The James H. Anderson Living Trust;
ROBERT WESTFALL; MINNIE
PATTON SCHOLARSHIP
FOUNDATION TRUST,

     Plaintiffs - Appellants,

and

THE PRITCHETT LIVING TRUST;
CYNTHIA W. SADLER; LEE WILEY
MONCRIEF 1988 TRUST; KELLY COX
TESTAMENTARY TRUST 7/1238401;
SWMF PROPERTIES, INC.,

     Plaintiffs,

v.

WPX ENERGY PRODUCTION, LLC,
f/k/a WPX Energy San Juan, LLC and
Williams Production Company, LLC;
WPX ENERGY ROCKY MOUNTAIN,
LLC, f/k/a Williams Production RMT
Company, LLC,

     Defendants - Appellees.

No. 17-2029

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:12-CV-00040-JB-WPL)**
_____

Bradley Brickell, Brickell & Associates, P.C., Norman, Oklahoma, for Plaintiffs-Appellants.

Mark F. Sheridan, Holland & Hart LLP, Santa Fe, NM, (Stephen G. Masciocchi, Denver, CO, and Robert J. Sutphin, Jr., with him on the briefs), for Defendants-Appellees.

_____

Before **BRISCOE**, **HARTZ**, and **PHILLIPS**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

In this case, we address the immediate appealability of a district court's denial of class certification. The named plaintiffs are the Anderson Living Trust (formerly known as the James H. Anderson Living Trust), Robert Westfall, and the Minnie Patton Scholarship Foundation Trust (collectively, the Trusts),[1] and the defendants are WPX Energy, Inc., and two of its subsidiaries (collectively, WPX).

Two years after the district court denied class certification, the parties settled the Trusts' individual claims. After settling, the parties jointly asked the court to enter a stipulated judgment dismissing with prejudice the Trusts' individual claims, and the court did so. In the judgment, the Trusts reserved any right they may have to appeal the district court's class-certification denial. The Trusts now appeal that denial, contending that the class-certification order merged with the stipulated judgment dismissing their individual claims, resulting in a final, appealable order under 28 U.S.C. § 1291.

---

[1] The Pritchett Living Trust, Cynthia W. Sadler, the Lee Wiley Moncrief 1988 Trust, the Kelly Cox Testamentary Trust 7/1238401, and SWMF Properties, Inc. were also named plaintiffs. But they haven't joined this appeal.

Relying on *Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017), we hold that we lack statutory appellate jurisdiction to review the district court's order denying class certification. Voluntarily dismissing the Trusts' individual claims with prejudice after settling them doesn't convert the class-certification denial—an inherently interlocutory order—into a final decision under 28 U.S.C. § 1291. We dismiss this appeal.[2]

## BACKGROUND

The Trusts and more than 1,000 putative class members (as lessors), and WPX (as lessee), are signatories to 507 separate gas leases covering 3,157 gas wells in the San Juan Basin—2,889 in New Mexico and 268 in Colorado. WPX holds the working interests in these leases, entitling it to develop and produce the hydrocarbons beneath the leased land. For their part, the Trusts and putative class members retain royalty interests, overriding royalty interests, or both, in the hydrocarbons produced.[3]

On December 5, 2011, the Trusts filed a putative class action against WPX in New Mexico state court, alleging seven claims: (1) that WPX underpaid royalties and

---

[2] We deny the Trusts' motion to certify to the New Mexico Supreme Court the question "whether the marketable condition rule applies to private royalty leases and overriding royalty instruments in New Mexico." Appellants' Mot. to Certify at 4; *see also Anaconda Minerals Co. v. Stoller Chemical Co.*, 990 F.2d 1175, 1177 (10th Cir. 1993) ("The Court will certify only questions which are both unsettled and dispositive.").

[3] A royalty interest in a gas lease is a real-property interest that vests when the developer extracts the gas. An overriding royalty interest is different. It is created by an assignment of the lessee's interest and bears no relationship to the lessor's royalty interest.

overriding royalties; (2) that WPX committed fraud, misstated the value of the hydrocarbons, and wrongly participated in affiliate sales;[4] (3) that WPX breached its duty to market the hydrocarbons developed from the leases; (4) that WPX violated the New Mexico Oil and Gas Proceeds Payment Act; (5) that WPX breached the lease contracts by acting in bad faith; (6) that WPX unjustly enriched itself; and (7) that WPX converted the Trusts' and putative class members' royalties and overriding royalties. WPX removed the case to the United States District Court for the District of New Mexico.

Two years into the litigation, the Trusts moved to certify their claims as a class action. Among the issues the Trusts sought to certify were these two: (1) whether WPX, under the terms of the leases, should be paying royalties and overriding royalties to the Trusts and putative class members based on "the price WPX and its affiliates received in the first arm's length sale . . . from the hydrocarbons produced and sold from their wells" and (2) whether WPX, under the terms of the leases, could pay royalties to the Trusts and putative class members based on an index value "when WPX and its affiliates receive[d] a higher value for said hydrocarbons."[5] Appellants' App. vol. 3 at 657 ¶¶ 5, 7. WPX opposed the motion. On March 19, 2015, the district

---

[4] WPX allegedly transfers title to the hydrocarbons it produces on the leased land to two of its affiliate companies for a contracted "price" (though no money ever changes hands)—an alleged affiliate "sale"—before selling the hydrocarbons to unaffiliated companies (arms-length sales).

[5] The industry considers the index value to be the "market value" for the hydrocarbons at the time and location of delivery. Appellants' App. vol. 7 at 1629:24–1630:2.

4

court declined to certify the class. The Trusts filed a Motion to Reconsider, which the court also denied.

Four months later, the Trusts filed a Fifth Amended Complaint, alleging an additional class claim: that WPX had breached its duty to sell the Trusts' and putative class members' hydrocarbons at the highest obtainable price and to pay them royalties and overriding royalties based on that price. Citing Fed. R. Civ. P. 23(d)(1)(D), WPX moved to strike the Fifth Amended Complaint's class allegations bearing on the new claim—the duty to sell the hydrocarbons at the highest obtainable price—arguing that the court had already denied class certification. But, noting that the Trusts hadn't asserted this highest-obtainable-price claim in their first certification motion, the court refused to strike the class allegations based on this additional claim. The district court said the Trusts could move to certify the new claim.[6]

Instead of moving to certify this additional class claim, the Trusts settled with WPX. The parties jointly moved to enter a stipulated judgment dismissing the Trusts' individual claims, advising that "[a]ll Plaintiffs' claims for relief alleged in this Action are hereby dismissed with prejudice pursuant to the settlement between the parties." Appellants' App. vol. 11 at 2836 ¶ 1. In the judgment, the Trusts reserved "any rights [they] may have to appeal the Court's Order . . . denying their motion for class certification, including the Court's denial of Plaintiffs' motion for

---

[6] The Trusts never moved to certify the highest-obtainable-price claim, and that claim is not part of this appeal.

reconsideration thereof." *Id.* at 2836–37 ¶ 2. A month later, the Trusts appealed the orders denying class certification and reconsideration.

After oral argument in the Trusts' appeal, we ordered supplemental briefing on whether we have jurisdiction to decide the appeal. In our order, we observed that "[i]n *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1711 (2017), the majority opinion identified some of the options the *Baker* plaintiffs had other than voluntarily dismissing their claims with prejudice." Suppl. Br. Order at 1. As one option, the *Baker* majority listed the settlement of the named plaintiffs' individual claims—the option that the Trusts chose here. *Baker*, 137 S. Ct. at 1711. So we asked each party to file a brief answering the following questions:

1. Did the plaintiffs in the present case settle their individual claims for full and fair value?

2. If so, how does that affect this court's jurisdiction under 28 U.S.C. § 1291 to hear the present appeal under *Baker*?

3. Even if fully and fairly settling their individual claims would give this court jurisdiction under 28 U.S.C. § 1291, would this court still lack jurisdiction under Article III of the United States Constitution's case-or-controversy requirement?

Suppl. Br. Order at 1–2.

The parties timely submitted their briefs. The Trusts contend (1) that the parties settled for full and fair value; (2) that we have jurisdiction under 28 U.S.C. § 1291 to review their appeal without transgressing *Baker*; and (3) that we have Article III jurisdiction to review their appeal. WPX disputes the Trusts' claims, arguing (1) that whether the settlement figure constituted full and fair value for the Trusts' individual

6

claims can't be determined; (2) that *Baker* establishes that we have no statutory appellate jurisdiction under § 1291; and (3) that we lack Article III jurisdiction over the Trusts' appeal.

## DISCUSSION

We first consider the options available to named plaintiffs seeking appellate review of orders denying class certification. Next, we examine the Supreme Court's *Baker* decision. Finally, we apply *Baker*'s framework to the Trusts' attempted § 1291 appeal to determine whether we have jurisdiction.

## A. Options to Appeal Adverse Class-Certification Orders

Named plaintiffs seeking appellate review of an order denying class certification have three options. *See Baker*, 137 S. Ct. at 1709, 1711. First, they may litigate "their individual claims on the merits to final judgment," and then appeal the order denying class certification under 28 U.S.C. § 1291. *Id.* at 1706. Section 1291 provides appellate jurisdiction from "final decisions of the district courts." 28 U.S.C. § 1291. "A 'final decision' is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945) (citing *St. Louis, I.M. & S. Ry. Co. v. S. Express Co.*, 108 U.S. 24, 28 (1883)).

This finality principle precludes immediate review of interlocutory orders, such as class-certification orders, unless Congress provides otherwise. *See Mohawk Indus., Inc., v. Carpenter*, 558 U.S. 100, 106 (2009) (noting that, to preserve § 1291's finality principle, only a small class of collateral rulings are immediately appealable);

7

*see also Vallario v. Vandehey*, 554 F.3d 1259, 1261 (10th Cir. 2009) (noting that no appeal of right exists for an adverse class-certification order). The principle thus guards against "piecemeal, prejudgment appeals," which "undermine[] 'efficient judicial administration' and encroach[] upon the prerogatives of district court judges, who play a 'special role' in managing ongoing litigation." *Mohawk Indus.*, 558 U.S. at 106 (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)). Preventing such appeals thus preserves "a healthy legal system." *Baker*, 137 S. Ct. at 1715 (quoting *Cobbledick v. United States*, 309 U.S. 323, 326 (1940)). And § 1291's general prohibition of interlocutory appeals of class-certification orders aligns with this goal. *See id.* at 1712, 1715.

Second, named plaintiffs may pursue an interlocutory appeal under 28 U.S.C. § 1292(b)'s two-step process. *Id.* at 1711. Section 1292(b) permits interlocutory appeals (1) if the district-court judge certifies that the interlocutory order involves "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal . . . may materially advance the ultimate termination of the litigation" and (2) if the court of appeals "permit[s] [the] appeal to be taken." 28 U.S.C. § 1292(b).

Third, they may petition the court of appeals for review under Fed. R. Civ. P. 23(f). *Baker*, 137 S. Ct. at 1709. Rule 23(f) gives courts of appeals unfettered discretion to "permit an appeal from an order granting or denying class-action certification." Fed. R. Civ. P. 23(f). And a court of appeals may grant an appeal "on the basis of any consideration that [it] finds persuasive." Fed. R. Civ. P. 23(f)

8

advisory committee's note to 1998 amendment. The advisory committee anticipated that "[t]he courts of appeals w[ould] develop standards for granting review." *Id.* It also predicted that appellate courts would "most likely" grant permission in two instances: "when the certification decision turns on a novel or unsettled question of law, or when, as a practical matter, the decision on certification is likely dispositive of the litigation." *Id.*

The rules committee adopted Rule 23(f) after the Supreme Court, in *Coopers & Lybrand v. Livesay*,[7] struck down the "'death-knell' doctrine." *Baker*, 137 S. Ct. at 1707, 1709. The death-knell doctrine had allowed a named plaintiff to appeal an order denying class certification under § 1291 if the denial was "likely to sound the 'death knell' of the litigation." *Coopers & Lybrand*, 437 U.S. at 469. But the Supreme Court determined that orders appealed under the doctrine don't satisfy § 1291's finality requirement. *Id.* at 477.

"After *Coopers & Lybrand*, a party seeking immediate review of an adverse class-certification order had no easy recourse." *Baker*, 137 S. Ct. at 1708. So the civil rules advisory committee drafted, and the Supreme Court approved, Rule 23(f). *Id.* at 1709. Noting that "[a] grant or denial of [class] certification can 'make or break' the litigation, and the need for review at times will be greatest in situations that are least likely to lead to district-court certification," the rule's drafters gave the courts of appeals broad discretion, independent of the district courts, to entertain class-

---

[7] 437 U.S. 463, 476 (1978), *superseded by rule as stated in Baker*, 137 S. Ct. at 1708–09.

certification appeals. Judicial Conference of the U.S., Advisory Comm. on Civil Rules, Minutes of Nov. 9–10, 1995. But because an absolute right to appeal class-certification orders "would lead to abuse," the drafters gave no such right. *Id.* After all, they reasoned, "[a]ppeals in such cases are likely to do little more than increase delay and expense." *Id.* The drafters anticipated "that permission to appeal, although discretionary in the court of appeals, [would] rarely be given." *Id.*

## B. *Microsoft Corp. v. Baker*

Forty years after *Coopers & Lybrand*, the Supreme Court decided *Baker*. In *Baker*, the named plaintiffs had filed a putative class action against Microsoft alleging that its videogame console, the Xbox 360, scratched game discs during play. 137 S. Ct. at 1710. The named plaintiffs sought class certification, but the district court struck their class allegations. *Id.* As a matter of comity, the district court concluded that a previous certification denial by the same federal district court in a separate case concerning the same putative class controlled its certification decision. *Id.* The named plaintiffs attempted to secure immediate appellate review of the district court's decision to strike their class allegations by petitioning the Ninth Circuit under Rule 23(f). *Id.* at 1711. But that court refused to hear their appeal. *Id.*

Returning to their menu of appellate options, the named plaintiffs attempted to obtain a final judgment under 28 U.S.C. § 1291. *Id.* But they took a novel approach. Rather than incurring the expense and delay of litigating the case on the merits to final judgment, they moved voluntarily to dismiss their individual claims with prejudice. *Id.* But they reserved what they contended was their right to appeal the

10

order striking their class allegations. *Id.* Microsoft stipulated to the dismissal but maintained that the named plaintiffs couldn't appeal the district-court order striking their class allegations. *Id.* After considering the named plaintiffs' request, the district court entered a final judgment dismissing their individual claims. *Id.* The named plaintiffs then appealed from that final judgment under § 1291, contesting only the district court's striking of their class allegations—not the final order dismissing their individual claims. *See id.* On appeal, the Ninth Circuit held that it had Article III jurisdiction over the named plaintiffs' class-certification appeal because, absent a settlement, the parties remained adverse. *Baker v. Microsoft Corp.*, 797 F.3d 607, 612 (9th Cir. 2015), *rev'd*, 137 S. Ct. 1702.

The Supreme Court granted certiorari in *Baker* to resolve this question: "Do federal courts of appeals have jurisdiction under § 1291 and Article III of the Constitution to review an order denying class certification (or, as here, an order striking class allegations) after the named plaintiffs have voluntarily dismissed their claims with prejudice?" *Baker*, 137 S. Ct. at 1712. Avoiding the constitutional issue, the Court answered no under § 1291.[8] *Id.* The Supreme Court identified three drawbacks to what it characterized as the named plaintiffs' "voluntary-dismissal tactic." *Id.* at 1713.

---

[8] A three-justice minority concluded that the named plaintiffs' appeal qualified as a final decision under 28 U.S.C. § 1291 but that the Court lacked Article III jurisdiction to hear the appeal. *Baker*, 137 S. Ct. at 1715–16 (Thomas, J. concurring, joined by Roberts, C.J., and Alito, J.).

11

First, the Court said the voluntary-dismissal tactic would invite "protracted litigation and piecemeal appeals." *Id.* The Court rejected the named plaintiffs' contention that the voluntary-dismissal tactic would promote efficiency. *Id.* at 1713–14. The Court warned that because "class certification often leads to a hefty settlement," "plaintiffs with weak merits claims may readily assume [the] risk" of "losing their claims for good" to appeal as of right the district court's refusal to certify a proposed class. *Id.* at 1713 (quoting Br. for Resp'ts at 35–36) (citing *Coopers & Lybrand*, 437 U.S. at 476). And named plaintiffs employing the tactic may "exercise that option more than once, stopping and starting the district court proceedings with repeated interlocutory appeals." *Id.* (citing *Coopers & Lybrand*, 437 U.S. at 474).

Second, the Court said that the tactic would "undercut[] Rule 23(f)'s discretionary regime" by creating a means to obtain an appeal as of right for class-certification denials. *Id.* at 1714. The tactic would allow named plaintiffs to "altogether bypass Rule 23(f) [and] force an appeal by dismissing their claims with prejudice." *Id.* The rule's drafters "studied the data on class-certification rulings and appeals, weighed various proposals, received public comment, and refined the draft rule." *Id.* (citing Michael E. Solimine & Christine Oliver Hines, *Deciding to Decide: Class Action Certification and Interlocutory Review by the United States Courts of Appeals Under Rule 23(f)*, 41 Wm. & Mary L. Rev. 1531, 1564–66 & nn. 178–89, and Fed. Judicial Ctr., T. Willging, L. Hooper, & R. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory*

12

*Committee on Civil Rules* 86, 80–87 (1996)). Their study yielded "a 'measured, practical solutio[n]'": Rule 23(f). *Id.* (alteration in original) (quoting *Mohawk Indus.*, 558 U.S. at 114). Allowing named plaintiffs to bypass Rule 23(f) would run contrary to the intent of the rule drafters, who settled when courts may permit interlocutory appeals of adverse certification orders. *Id.* So the Court rejected any runarounds of Rule 23(f), observing that "[i]t is not the prerogative of litigants or federal courts to disturb [the rule drafters'] settlement." *Id.* at 1715.

Third, the tactic's "one-sidedness" would give the named plaintiffs an unfair advantage, "permit[ting] plaintiffs only, never defendants, to force an immediate appeal of an adverse certification ruling." *Id.* And "[y]et the 'class issue' may be just as important to defendants, for '[a]n order granting certification . . . may force a defendant to settle rather than . . . run the risk of potentially ruinous liability.'" *Id.* (second alteration in original) (citation omitted) (quoting *Coopers & Lybrand*, 437 U.S. at 476, and Fed. R. Civ. P. 23(f) advisory committee's note to 1998 amendment).

Because of these drawbacks to the voluntary-dismissal tactic, the Court determined that a judgment obtained through this sleight of hand doesn't "qualify as a 'final decision' within the compass of § 1291." *Id.* at 1707. So though the *Baker* named plaintiffs created a final judgment under § 1291 in a "technical" sense by voluntarily dismissing their individual claims with prejudice, the Court determined that "practical" considerations—namely, § 1291's finality principle and preserving

13

Rule 23(f)'s balanced solution—precluded appellate jurisdiction. *Id.* at 1712 (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171 (1974)).

## C. Application of *Baker*

Like the named plaintiffs in *Baker*, the Trusts seek appellate review under § 1291 of an order denying class certification. But unlike the named plaintiffs in *Baker*, the Trusts didn't act unilaterally—they first settled their individual claims against WPX for consideration, and then voluntarily dismissed their claims with prejudice. Emphasizing this distinction, the Trusts contend that *Baker* doesn't control this case. The settlement, they claim, puts them "in no different posture than had they litigated their claims to a positive, final judgment by jury trial." Appellants' Suppl. Br. at 7. Guided by *Baker*'s three-drawback framework, we disagree.[9]

### 1. Protracted Litigation and Piecemeal Appeals

First, as in *Baker*, the danger of protracted litigation and piecemeal appeals remains even when named plaintiffs have settled their individual claims. If we sanction the settlement approach, named plaintiffs who settle their individual claims would have a right to appeal earlier denials of class certification under § 1291. If those named plaintiffs so appeal, and the appeals court then reverses and remands the district court's order denying class certification, the district court might decline to

---

[9] Because 28 U.S.C. § 1291 doesn't "countenance jurisdiction by these means, we do not reach the constitutional question"—whether we have Article III jurisdiction to review an order denying class certification after the named plaintiffs settle their individual claims and then voluntarily dismiss them with prejudice. *Baker*, 137 S. Ct. at 1712.

certify the class "on a different ground." *See Baker*, 137 S. Ct. at 1713. The named plaintiffs could then seek a second piecemeal appeal. The settlement approach would thus bring with it the "stopping and starting [of] the district court proceedings with repeated" piecemeal interlocutory appeals, as does the voluntary-dismissal tactic. *See id.*

## 2. Rule 23(f)'s Discretionary Appellate-Review Regime

Second, like the *Baker* named plaintiffs' voluntary-dismissal tactic, the Trusts' settlement approach would disturb Rule 23(f)'s discretionary appellate-review regime. *Baker*, 137 S. Ct. at 1714. In *Baker*, the Supreme Court warned that sanctioning the voluntary-dismissal tactic by granting jurisdiction would let plaintiffs "altogether bypass Rule 23(f)." *Id.* Here, the Trusts tried to do just that, and they did so purposefully, admitting in their reply brief that "[g]iven the uncertain and tenuous nature of a request for permissive appeal under [Rule] 23(f), the only absolute right to seek this Court's review of the denial of class certification [was] following a final judgment under 28 U.S.C. § 1291." Appellants' Reply Br. at 8 (emphasis removed). But Rule 23(f)'s drafters intended appellate review to be discretionary with the courts of appeals. Judicial Conference of the U.S., Advisory Comm. on Civil Rules, Minutes of Nov. 9–10, 1995.

Nevertheless, the Trusts contend that Rule 23(f) is irrelevant to their class-certification appeal because the post-settlement stipulated judgment dismissing their individual claims "fulfills the requirements of a final decision under 28 U.S.C. § 1291." Appellants' Suppl. Br. at 6. The *Baker* named plaintiffs made a similar

claim. They argued that their appeal technically complied with § 1291 because it involved "an *actual* final judgment," not an interlocutory order from which they could petition a court of appeals under Rule 23(f). *Baker*, 137 S. Ct. at 1714 (quoting Br. for Resp'ts at 26, 28). So, the *Baker* named plaintiffs reasoned, Rule 23(f) didn't apply and the Ninth Circuit had jurisdiction over their appeal under § 1291. *Id.*

But the Supreme Court rejected the *Baker* named plaintiffs' "technical[ly]" compliant § 1291 appeal. *Id.* at 1712 (quoting *Eisen*, 417 U.S. at 171). It did so because there, appellate review would have sanctioned the voluntary-dismissal tactic, and that tactic wouldn't further a healthy legal system. *Id.* at 1714–15. So, too, have the Trusts presented us a technically compliant final judgment under § 1291 that fails to preserve Rule 23(f)'s discretionary-review regime and thus doesn't further a healthy legal system. By contrast, a hypothetical plaintiff who litigates her claims on the merits to final judgment isn't circumventing Rule 23(f) with a low-risk, high-reward strategy that taxes § 1291's finality requirement, so our jurisdiction follows.

### 3. One-Sidedness

Third, the Trusts' settlement approach, like the voluntary-dismissal tactic, gives plaintiffs the advantage. *See id.* at 1715. Defendants enjoy no symmetrical right to settle named plaintiffs' individual claims and then appeal a class-certification grant.[10] Once the district court grants certification, "the entire class is the actual

---

[10] *Coopers & Lybrand* explained the need for symmetrical opportunities for plaintiffs and defendants to appeal adverse class-certification orders:

plaintiff." Erwin Chemerinsky, Federal Jurisdiction 155 (7th ed. 2016). But "[c]lass members that have already settled their claims prior to [a] class action settlement are . . . no longer class members . . . ." 4 William B. Rubenstein, Newberg on Class Actions § 13:23 (5th ed. 2018). So when named plaintiffs settle their individual claims before a class settlement, they forego their class-member status and their interests become "divorce[d]" from the class. *Muro v. Target Corp.*, 580 F.3d 485, 491 (7th Cir. 2009). And that divorce means that an interlocutory order granting class certification wouldn't merge into a stipulated final judgment disposing of the formerly named plaintiffs', now non-class members', individually settled claims. *Cf. West v. Capitol Fed. Sav. and Loan Assoc.*, 558 F.2d 977, 980 (10th Cir. 1977) (noting that an order denying class certification merges into a final judgment,

> The class issue—whether to certify, and if so, how large the class should be—will often be of critical importance to defendants as well [as plaintiffs]. *Certification* of a large class may so increase the defendant's potential damages liability and litigation costs that he may find it economically prudent to settle and to abandon a meritorious defense. Yet the Courts of Appeals have correctly concluded that orders *granting* class certification are interlocutory.

437 U.S. at 476 (emphases added); *see also Baker*, 137 S. Ct. at 1715 ("Respondents' theory permits plaintiffs only, never defendants, to force an immediate appeal of an *adverse* certification ruling." (emphasis added)); Tr. of Oral Arg. at 23:16–20, *Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017) (No. 15-457) ("[D]efendants [are] being forced to undergo a tactic that it [sic] does not have when the *converse* is the case. In other words, where there's a grant of class certification, defendants have no way to manufacture an automatic right to appeal." (emphasis added)); Br. for Pet'rs at 28–29, *Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017) (No. 15-457) ("'[T]he class issue . . . will often be of critical importance to defendants . . . .' Yet just like the death-knell doctrine, the voluntary dismissal tactic ignores the *symmetrical* impacts of class certification decisions . . . . This one-way ratchet distorts litigation and settlement incentives in these high-stakes cases." (emphasis added) (citations omitted) (quoting *Coopers & Lybrand*, 437 U.S. at 476)).

17

rendering the class-certification denial reviewable) (citing *Monarch Asphalt Sales Co. v. Wilshire Oil Co. of Tex.*, 511 F.2d 1073, 1077 (1975)). So the asymmetry of the Trusts' settlement approach reinforces our conclusion that it doesn't support appellate jurisdiction under § 1291. *See Baker*, 137 S. Ct. at 1715 (quoting *Coopers & Lybrand*, 437 U.S. at 476).

Litigation on the merits to final judgment, though, doesn't create the same lopsided opportunities as the *Baker* named plaintiffs' voluntary-dismissal tactic and the Trusts' settlement approach. Unlike settling, litigating on the merits to final judgment and then appealing under § 1291 provides symmetrical opportunities to plaintiffs and defendants. Then, dissatisfied named plaintiffs *or* dissatisfied defendants can appeal an adverse certification order.

Similarly, Rule 23(f) provides symmetrical appeal opportunities for thwarted named plaintiffs *and* thwarted defendants. We have found it "generally appropriate" to grant a Rule 23(f) petition from a class-certification grant when "a defendant's potential liability [is] so enormous that settlement 'becomes the only prudent course.'" *Vallario*, 554 F.3d at 1263 (quoting *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1189 (10th Cir. 2006)). Likewise, we have found it "generally appropriate" to grant Rule 23(f) petitions of class-certification denials "where the high costs of litigation grossly exceed an individual plaintiff's potential damages, [and] the denial of class certification sounds the death knell of that plaintiff's claims." *Id.* So plaintiffs and defendants can both seek relief from an adverse class certification order under Rule 23(f).

18

And whatever differences may exist between permitting a plaintiff to force an immediate appeal of an adverse certification order versus permitting a defendant to do the same, balancing those differences is a "question[] of policy for Congress." *Baker*, 137 S. Ct. at 1715 (quoting *Coopers & Lybrand*, 437 U.S. at 476). For now, Congress has chosen "the rulemaking process to settle the matter, and the rulemakers did so by adopting Rule 23(f)'s evenhanded prescription." *Id.* We won't disturb that settlement.

## D. Options Available to the Trusts Post-*Baker*

The Trusts argue that "<u>no alternative existed</u>" to dismissing their claims with prejudice once the district court denied their class-certification motion. Appellants' Reply Br. at 8. This is untrue. They had four options—though only three created a path to appellate review. Their choices included: (1) "settl[ing] their individual claims;" (2) seeking district-court certification of the interlocutory class-certification order and then this court's permission to appeal that order under 28 U.S.C. § 1292(b); (3) petitioning for interlocutory review of the class-certification order under Rule 23(f); or (4) litigating on the merits to final judgment and then appealing under 28 U.S.C. § 1291. *Baker*, 137 S. Ct. at 1709, 1711. They chose option one, which creates no path to appellate review. We can't widen the scope of § 1291's final-judgment rule and extend "appellate review of interlocutory orders not covered by statute" to include the Trusts' settlement approach. *Id.* at 1714. Any changes must "come from rulemaking, . . . not judicial decisions in particular controversies or inventive

litigation ploys." *Id.* (citing *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 48 (1995)).

Finding daylight between the *Baker* named plaintiffs' voluntary-dismissal tactic and the Trusts' settlement approach requires splitting hairs. Voluntary dismissal is functionally a settlement for nothing. That the Trusts managed to procure a price for the dismissal of their individual claims is simply a new take on the old voluntary-dismissal tactic. The Trusts can't turn the district court's class-certification denial, an "inherently interlocutory" order, into a final, appealable order within the compass of 28 U.S.C. § 1291 by settling their individual claims. *Id.* at 1707 (quoting *Coopers & Lybrand*, 437 U.S. at 470). To hold otherwise would disrupt Rule 23(f)'s careful calibration.[11]

## CONCLUSION

For the reasons above, we dismiss this appeal for lack of jurisdiction. We deny the Trusts' motion to certify. We grant WPX's motion for leave to file the settlement agreement in support of their response to the Trusts' motion to certify, deny WPX's

---

[11] We acknowledge that the Ninth Circuit has reached a different conclusion in an analogous case, *Brown v. Cinemark USA, Inc.*, 876 F.3d 1199, 1201 (9th Cir. 2017). In *Brown*, after the district court denied class certification, the named plaintiffs, like the Trusts here, sought to appeal the class-certification denial as of right under 28 U.S.C. § 1291. 876 F.3d at 1200–01. The Ninth Circuit permitted this. *Id.* at 1201. That court distinguished *Baker* from *Brown* based on the difference between settling claims for consideration and voluntarily dismissing them. *Id.* Unlike the *Brown* court, we apply *Baker*'s three-drawback framework to decide our appeal. For us, this leads to a different outcome.

motion to file a sur-reply to the Trusts' reply brief, and we deny the Trusts' motion for leave to file a reply to WPX's response to the Trusts' Rule 28(j) letter.